UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JEFFREY GEORGE SENTER,           )<br>                                                        )<br>            Plaintiff,                         )<br>                                                        )<br>v.                                                    )<br>                                                        )<br>MARILYN HATLEY, Personally and as  )<br>Mayor of the City of North Myrtle Beach, )<br>DAVID HATLEY, CITY OF NORTH      )<br>MYRTLE BEACH, MELISSA and         )<br>TRACY EDGE, and the NORTH MYRTLE )<br>BEACH AQUATIC FITNESS CENTER,  )<br>                                                        )<br>            Defendants.                     )<br>_____ ) | C/A No.: 4:12-cv-2502-RBH-KDW<br><br><br><br><br>REPORT AND RECOMMENDATION |

On July 10, 2012, Plaintiff Jeffrey George Senter ("Plaintiff" or "Senter") filed suit in the Court of Common Pleas of Horry County, South Carolina against "Marilyn Hatley, Personally and as Mayor of the City of North Myrtle Beach, David Hatley, City of North Myrtle Beach, Melissa and Tracy Edge, and the North Myrtle Beach Aquatic Fitness Center." Compl., ECF No. 1-1. Plaintiff alleged seven causes of action including violation of 42 U.S.C. §1983 against Defendant Marilyn Hatley; intentional interference with contract against Defendants David Hatley, Marilyn Hatley, Melissa Edge, and Tracy Edge; wrongful termination in violation of public policy against the City of North Myrtle Beach; intentional infliction of emotional distress against Defendants Melissa Edge, Tracy Edge, David Hatley and Marilyn Hatley; intentional interference with contract against Defendants Melissa Edge and Tracy Edge; violation of Plaintiff's right to privacy against Defendant North Myrtle Beach Aquatic Fitness Center; and assault against Defendant Melissa Edge. *Id.* On August 30, 2012, Defendants Marilyn Hatley, the City of North Myrtle Beach, and the North Myrtle Beach Aquatic Fitness Center removed the

action, asserting that the "Complaint asserts federal questions over which this court has original jurisdiction under 28 U.S.C. §1331, and the action is one which may be removed to this court by the defendant pursuant to 28 U.S.C. §§ 1441 and 1446." Notice of Removal, ECF No. 1. Defendant David Hatley filed an Answer to the Complaint on September 5, 2012.[1] ECF No. 5. Defendants Tracy Edge and Melissa Edge consented to removal, and notice of consent to removal was filed with the court on September 7, 2012. ECF No. 8.

This matter is before the court on the Motion to Dismiss filed by Defendants Marilyn Hatley, North Myrtle Beach, and North Myrtle Beach Aquatic Fitness Center on August 30, 2012.[2] ECF No. 4. On October 1, 2012, Plaintiff filed a memorandum in opposition to Defendants' motion. ECF No. 13. Defendants filed a reply to Plaintiff's response, ECF No. 15, on October 12, 2012, and an amended reply on December 19, 2012, ECF No. 19. Having considered the pleadings and the parties' briefs, the undersigned submits this Report recommending Defendants' Motion to Dismiss, ECF No. 4, be denied.

---

[1] Defendant David Hatley did not file a notice of consent to the removal. In cases involving multiple defendants, the "rule of unanimity" requires that all defendants in a multi-defendant case must join in the petition for removal. *Bergmann v. Fed. Nat. Mortg. Ass'n*, No. 9:11-CV-00411, 2011 WL 2729229, at *2 (D.S.C. July 12, 2011). "If all defendants do not join in the petition for removal within the designated period—either by signing the same notice, filing an independent notice or consent, or otherwise unambiguously notifying the court that they consent to removal—the removal may be deemed defective." *Funchess v. Blitz U.S.A., Inc.*, No. 5:10-1634-MBS, 2010 WL 4780357, at *4 (D.S.C. Nov. 16, 2010). However, Plaintiff did not timely move to remand and has therefore waived any procedural defects in the removal. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").

[2] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g), D.S.C, which provides that "[a]ll pretrial proceedings involving litigation arising out of employment discrimination cases invoking federal statutes which proscribe unfair discrimination in employment" be referred to a United States Magistrate Judge. Because the Motion to Dismiss is dispositive, the undersigned enters this Report for the district judge's consideration.

I.    Factual Background

During the time period relevant to his Complaint, Plaintiff was employed by the City of North Myrtle Beach as a police sergeant. ECF No. 1-1 ¶ 11. Plaintiff held that position for 16 years. *Id*. In December 2007, Plaintiff and his children became friends with Defendant Melissa Edge and her children, and Plaintiff had "a good and friendly working relationship" with Defendant Marilyn Hatley.[3] *Id.* ¶ 15. Plaintiff asserts that beginning in January 2008, Defendant David Hatley, the husband of Marilyn Hatley, began following Melissa Edge's movements around town, which included Plaintiff's residence. *Id.* ¶ 17. Plaintiff alleges that David Hatley became obsessed with the friendship between Plaintiff and Melissa Edge "to the point of advising Mr. Edge that he needed to end [their] friendship." *Id.* ¶ 18. Plaintiff asserts that this information was relayed to the North Myrtle Beach Director of Public Safety, William Bailey ("Bailey") and command staff which caused Plaintiff difficulties and harassment at work. *Id.* In February 2008 Plaintiff advised his superiors that he "was working in a hostile environment" because of the problems caused by the actions of Mr. Edge and Mr. Hatley. *Id.* ¶ 21. Plaintiff states that the person designated to investigate his complaint of hostile work environment resigned from the city in April 2008, and no one assumed his duties, including the investigation of Plaintiff's complaint. *Id.* ¶¶ 22-26.

On June 3, 2008, Bailey informed Plaintiff that Plaintiff was "unable to qualify for a Sergeant One appointment due to his personal problems" related to Melissa Edge, Tracy Edge, and David Hatley, and Bailey demoted Plaintiff to a Sergeant Two position. *Id.* ¶ 41. The same day, Plaintiff was advised by the City Manager that Mr. Edge was disrupting the city's operations and Plaintiff "could be terminated if his actions did not stop." *Id.* ¶ 42. Plaintiff

---

[3] Defendant Marilyn Hatley was mayor of North Myrtle Beach, South Carolina. *See* Compl. ¶ 15, ECF No. 1-1.

informed the City Manager that Mr. Hatley "was stalking Mrs. Edge and the Plaintiff and was giving Mr. Edge false information due to his obsession with their friendship." *Id.* Plaintiff asserts the City of North Myrtle Beach did not pursue legal action against Mr. Edge because he was a South Carolina state legislator whose district included the City of North Myrtle Beach. *Id.* ¶ 43. In April 2009, Bailey was terminated, and in May 2010 Plaintiff was re-appointed to Sergeant One status. *Id.* ¶¶ 67-68. Plaintiff asserts that in May 2010 he began to withdraw from his friendship with Melissa Edge due to her "continued personal family issues, being emotionally distraught and her uncontrollable anger." *Id.* ¶ 70. Plaintiff alleges that between June 25, 2010 and July 15, 2010, Melissa Edge continued to "try to make contact with the Plaintiff by phone calls, texts and emails but, the Plaintiff did not respond." *Id.* ¶ 72.

In early September 2010, Plaintiff alleges that North Myrtle Beach fire fighter, Brad Infante ("Infante"), informed Plaintiff that he was involved in a sexual relationship with Melissa Edge and feared that he might get fired. *Id.* ¶ 82.  On September 14, 2010 at 9:30 p.m. Plaintiff arrived at the fire station to talk to Infante.  *Id.* ¶ 95.  Plaintiff alleges that at approximately 9:46 p.m., Melissa Edge drove to the fire station, approached Plaintiff and "began talking loudly and was extremely angry and upset." *Id.* Plaintiff advised Mrs. Edge to leave and she refused. *Id.* Plaintiff then stepped in front of his patrol car and advised Mrs. Edge that he would activate the in-car recording equipment if she refused to leave. *Id.* Mrs. Edge refused to leave and Plaintiff activated the recording equipment. *Id.* Mrs. Edge began "making obscene and lewd statements." *Id.*  When Plaintiff perceived that Mrs. Edge was "out of control and angry" he placed her in the rear of the police car for a short period until she calmed down. *Id.* ¶ 96. Plaintiff placed a call to his supervisor at 9:59 p.m., advised him of Mrs. Edge's condition, and suggested that Mr. Edge should be called to pick up his wife. *Id.* at 33. Plaintiff's supervisor went to the Edge residence,

4

and at 10:26 p.m. Mr. Edge arrived on the scene. *Id.* On September 15, 2010, Plaintiff met with his superiors who "showed no concerns about the way the incident was handled." *Id.* ¶ 101. Plaintiff was advised not to do any paperwork, and Plaintiff informed his superiors that the incident was recorded. *Id.*

Plaintiff alleges that on September 21, 2010, Mayor Hatley and David Hatley had dinner with the City Manager and his wife. Compl. ¶ 113, ECF No. 1-1. Later that night, the Public Safety Interim Director, Captain Rick Buddlemeyer ("Buddlemeyer") telephoned Plaintiff and ordered Plaintiff to report to his office the next morning. *Id.* ¶ 115. At the meeting on September 22, 2010, Buddlemeyer informed Plaintiff of a media request for the video of the September 14th incident. *Id.* ¶ 116. Buddlemeyer also informed Plaintiff that the City administration thought Plaintiff should have given Mrs. Edge field sobriety tests, and Plaintiff was being removed from all supervisory responsibilities and placed on administrative duties until further notice. *Id.* Plaintiff asked to view the video, but Buddlemeyer denied his request and told Plaintiff he would have to request the video through the Freedom of Information Act ("FOIA"). *Id.* ¶ 118.

On October 5, 2010, Buddlemeyer informed Plaintiff that the City administration believed Plaintiff handled the September 14, 2010 incident improperly. *Id.* ¶ 127. Plaintiff was given the choice to resign or be terminated. *Id.* That same day, Plaintiff's then legal counsel, Greg McCollum ("McCollum"), sent a letter to the City Manager requesting a copy of the video under the FOIA; the request was denied. *Id.* ¶ 129. Plaintiff was terminated on October 6, 2010. *See id.* ¶ 127. On October 19, 2010, the city's former Public Safety Director filed an action against the City Manager for violation of the FOIA for his refusal to release incident reports, videos, and dispatch call information related to the incident at the fire station. *See* Ex. C to Defs.' Mem., ECF No. 4-4. The FOIA complaint was amended on October 28, 2010, to add the City as

5

a defendant and add Plaintiff and The Sun News as plaintiffs. *See* Ex. D to Defs.' Mem., ECF No. 4-5.

On November 8, 2010, Plaintiff was allowed to view the video at city hall. Compl. ¶ 138, ECF No. 1-1. The next day Plaintiff was informed by hand-delivered letter that the city planned to release the video to the media on November 12, 2010, because Plaintiff had joined the FOIA lawsuit. *Id.* ¶ 140. Plaintiff alleges that he received a telephone call from Mr. Edge on November 10, 2010. *Id.* ¶ 141. Plaintiff asserts that Mr. Edge informed him that the city would not release the video to the media "if the Plaintiff was removed from the lawsuit and closed the grievance hearing to the public." *Id.* After speaking with Attorney McCollum, Plaintiff consented to a closed grievance hearing. *Id.* ¶¶ 142-43. On November 12, 2010, Attorney McCollum executed and filed a stipulation of dismissal in the FOIA action, and Plaintiff was dismissed from the action as a party. Defs.' Mem. at 2, ECF No. 4-1.

Plaintiff asserts that on November 4, 2010, Melissa Edge telephoned Plaintiff and asked him "if he was going to the gym." Compl. ¶ 137, ECF No. 1-1. When Plaintiff informed her that he could no longer afford the gym membership Defendant Edge volunteered to renew the membership "because it would be the least she could do after causing the Plaintiff so many problems." *Id.* On November 15, 2010, Plaintiff was asked by a member of the media about Mrs. Edge's payment of his gym membership. *Id.* ¶ 145. Plaintiff asserts that "[r]elease of this information [by North Myrtle Beach Aquatic & Fitness Center] has caused the media to make statements that the Plaintiff closed the grievance hear[ing] due to the gym membership." *Id.* ¶ 146.

Plaintiff subsequently filed the instant litigation against Defendants Marilyn and David Hatley, Melissa and Tracy Edge, the City of North Myrtle Beach, and the North Myrtle Beach

Aquatic Fitness Center. Defendants Mayor Marilyn Hatley, City of North Myrtle Beach, and the North Myrtle Beach Aquatic Fitness Center move for dismissal of the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants Mayor Hatley and the City argue the claims against them are barred by the doctrine of res judicata. Defendant Myrtle Beach Aquatic Fitness Center argues that Plaintiff has not alleged facts sufficient to support Plaintiff's claim against it for invasion of privacy.

II.     Standard of Review

Res judicata is an affirmative defense and is treated as a basis for dismissal under Rule 12(b)(6). *See Davani v. Va. Dept. of Trans.*, 434 F.3d 712, 720 (4th Cir. 2006) (noting res judicata or claim preclusion challenge is to be considered pursuant to Rule 12(b)(6)). "A federal court may consider matters of public record such as documents from prior . . . court proceedings in conjunction with a Rule 12(b)(6) motion." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009); *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) ("Although an affirmative defense such as res judicata may be raised under Rule 12(b)(6) only if it clearly appears on the face of the complaint, when entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact.") (internal quotations and citations omitted).

The purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

   III.   Analysis

      A. Res Judicata

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Weston v. Margaret J. Weston Med. Ctr.*, C.A. No. 1:05-2518-RBH, 2007 WL 2750216 at *1 (Sept. 20, 2007) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). This court must accordingly "analyze South Carolina law pertaining to res judicata to determine whether this action is barred by the earlier state action." *Id.* "Res judicata is a rule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and, as to them, constitutes an absolute bar to a subsequent action." *In re Crews*, 698 S.E.2d 785, 794 (S.C. 2010) (citing *Black's Law Dictionary* 1174 (5th ed. 1979)). Res judicata's fundamental purpose is "to ensure that no one should be twice sued for the same cause of action." *Judy v. Judy*, 712 S.E.2d 408, 414 (S.C. 2011) (internal citations omitted). As the South Carolina Supreme Court observed, "res judicata is the branch of the law that defines

the effect a valid judgment may have on subsequent litigation between the same parties and their privies. Res judicata ends litigation, promotes judicial economy and avoids the harassment of relitigation of the same issues." *Plum Creek Dev. Co., Inc., v. City of Conway*, 512 S.E.2d 106, 108 (S.C. 1999) (quoting J. Flanagan, *South Carolina Civil Procedure* 642 (1996)). In South Carolina "[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit." *Hilton Head Ctr. of S.C., Inc. v. Pub. Serv. Comm'n of S.C.*, 362 S.E.2d 176, 177 (S.C. 1987).

In this case, Defendants Marilyn Hatley, City of North Myrtle Beach, and the North Myrtle Beach Aquatic Center seek dismissal on res judicata grounds, arguing Plaintiff's stipulated dismissal of the FOIA action bars Plaintiff from asserting his violation of § 1983 claim and wrongful termination claim. Defs.' Mem. 3-7, ECF No. 4-1. As a preliminary matter, this court finds that a stipulation of dismissal *with prejudice* made pursuant to Rule 41(a)(1) of the South Carolina Rules of Civil Procedure[4] constitutes a final judgment for res judicata purposes. "In South Carolina, a voluntary dismissal of a cause of action with prejudice constitutes a final judgment on the merits." *McKinnon v. S.C. Dept. of Health & Envtl. Control*, No. 3:07-3901-JFA-BM, 2008 WL 2066408, at *4 (D.S.C. May 13, 2008) (citing *Kenny v. Quigg*, 820 F.2d 665, 669 (4th Cir. 1987) (noting a voluntary dismissal with prejudice is a valid, final judgment on the merits for consideration of res judicata effect) (internal quotation omitted).

The court must compare the present action with the earlier action to determine if the doctrine of res judicata applies. The specific South Carolina law regarding the doctrine of res judicata is set forth in *Plum Creek* as follows:

---

[4] The South Carolina Rule is identical to the Federal Rule except that the state rule requires service in addition to filing of the notice of dismissal.

9

> Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties. Under the doctrine of res judicata, a litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit. To establish res judicata, the defendant must prove the following three elements: (1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit.

*Plum Creek*, 512 S.E.2d at 109 (internal quotation and citations omitted).

Here, there is identity of the parties between the earlier action and the present action as both lawsuits were brought by Plaintiff against the City of North Myrtle Beach. The fact that there were additional plaintiffs and defendants in the earlier action does not preclude application of the doctrine of res judicata as to the parties in the present action.  "A prior judgment may operate as an estoppel even though the action in which it was rendered included additional parties not joined in the subsequent suit."  50 C.J.S. *Judgments* § 1122 (2010); *see also Wofford v. United States*, 823 F. Supp. 386 (W.D. Va. 1992).

Defendants argue that because the subject matter of the FOIA action was the release of the dash-cam video, because that video is mentioned 23 times in Plaintiff's Complaint, and because Plaintiff's termination from employment based on his actions captured in the video could have been raised in the FOIA action, there is identity of subject matter. Defs.' Mem. 6, ECF No. 4-1.  Plaintiff disputes that the subject matter is the same in both lawsuits, and asserts the "only similarity is the mention of a video tape requested by several individuals in the community." Pl.'s Resp. 7, ECF No. 13.  The undersigned agrees with Plaintiff that the issue before the court in the FOIA action is not the identical issue before this court.  If the primary right and duty and alleged wrong are the same in each action, there is an identity of subject matter. *See Jimmy Martin Realty Group, Inc. v. Fameco Distrib., Inc.*, 386 S.E.2d 803 (S.C. Ct. App. 1989).

10

> South Carolina courts have held that "[i]f the same facts or evidence would sustain both, the two actions are considered the same within the rule that the judgment in the former is a bar to the subsequent action. If, however, the two actions rest upon different states of facts, or if different proofs would be required to sustain the two actions a judgment in one is no bar to the maintenance of the other."

*Eldeco, Inc. v. Skanska USA Bldg., Inc.*, 412 F. Supp. 2d 556, 559 (D.S.C. 2005) (quoting *Griggs v. Griggs*, 51 S.E.2d 622, 626 (S.C. 1949)). In the FOIA action Plaintiff sought to compel the City to release the dash-cam video that it withheld in violation of the FOIA and asserted a claim for declaratory and injunctive relief. *See* Ex. D to Defs.' Mem. 6, ECF No. 4-5. In the current action Plaintiff alleges Mayor Hatley instituted and pursued false charges against him, falsely accused him of certain actions during wildfires, violated Plaintiff's First Amendment rights and rights to privacy, and engaged in retaliatory behavior against Plaintiff all in violation of § 1983; Plaintiff alleges the City wrongfully terminated Plaintiff in violation of public policy. Compl. ¶¶ 151-55, 167-74, ECF 1-1. The facts and evidence needed to prove these claims are different than the evidence needed to prove violation of FOIA in the withholding of a video. Accordingly, there is no identity of subject matter. *See Edelco*, 412 F. Supp. 2d at 559 (finding the subject matter was distinct when the court had to "consider an entirely different set of facts and evidence" to decide the case).

As to the third element of the doctrine of res judicata, adjudication of the issue in the former suit, South Carolina law bars litigants from raising not only issues that were actually litigated in the former suit, but also issues that might have been raised in the former suit. *See Eichman v. Eichman*, 329 S.E.2d 764, 766 (S.C. 1985). Here, there was no actual adjudication of Plaintiff's § 1983 or wrongful termination claims in the former suit because the only cause of action in the state court complaint was violation of the FOIA. "If the subject matter of the first and second suits are not identical, then it necessarily follows that the question raised in the

11

instant case could not have been adjudicated in the former trial." *Johnson v. Carolina Life Ins. Co.*, 20 S.E.2d 713, 715 (S.C. 1942).

Defendants assert that Plaintiff could have joined his present claims in the FOIA action, and Plaintiff's broad stipulation of dismissal with prejudice included all potential claims. The court in *Judy* held that to determine whether a claim should have been raised in the first suit, four factors can be considered: (1) whether there is identity of the subject matter in both cases; (2) whether the first and second cases involve the same primary right held by the plaintiff and one primary wrong committed by the defendant; (3) whether there is the same evidence in both cases; and (4) whether the claims arise out of the same transaction or occurrence that is the subject matter of the prior action. *Judy*, 712 S.E.2d at 414 (ruling that "the four tests previously used by [South Carolina] appellate courts should be considered merely as factors rather than rigid, independent tests."). Here, the duties that were breached and the evidence were not the same in both proceedings. Although Defendants rely heavily on the broad language of Plaintiff's stipulation of dismissal, they fail to emphasize the language limiting the dismissal to the FOIA action. The stipulated dismissal states:

> Pursuant to Rule 41(a)(1), SCRCP, and the common law right of a party to waive claims, the Plaintiff Jeffrey Senter hereby stipulates to the dismissal of all of his claims against any and all defendants *in this action* and any and all servants and agents of the City of North Myrtle Beach with prejudice and hereby waives any and all such claims which have or could have been made *related to the subject matter of this action.*

Ex. E to Defs.' Mem., ECF No 4-6 (emphasis added). That Plaintiff's former counsel requested a copy of the dash-cam video on the day Plaintiff was told to resign or be fired, or that the video is mentioned in 23 of 205 paragraphs in the Complaint is not sufficient to meet the four factors set forth in *Judy*. Because all three elements of the test for res judicata have not been met, the

12

undersigned finds that res judicata does not bar this action. Defendants' Motion to Dismiss on res judicata grounds should be denied.

B. Failure to State a Claim Upon Which Relief May Be Granted

Defendants contend that Plaintiff's claim for invasion of privacy against the North Myrtle Beach Aquatic Fitness Center fails because Plaintiff has not alleged facts sufficient to constitute such a cause of action. Defs.' Mem. 7, ECF No. 4-1.

"Under South Carolina law, a cause of action for invasion of privacy comes in three forms: wrongful appropriation of personality, wrongful publicizing of private affairs, and wrongful intrusion into private affairs." *Weeks v. Union Camp Corp.*, 215 F.3d 1323 (Table), Nos. 98-2814, 98-2815, 2000 WL 727771 (4th Cir. June 7, 2000) (citing *Snakenberg v. Hartford Cas. Ins. Co.*, 383 S.E.2d 2, 5 (S.C. Ct. App. 1989)). In this case, Plaintiff alleges wrongful publicizing of private affairs. *See* Compl. ¶¶ 91-97. As the South Carolina Court of Appeals has explained:

> Wrongful publicizing of private affairs involves a public disclosure of private facts about the plaintiff. The gravamen of the tort is publicity as opposed to mere publication. The defendant must intentionally disclose facts in which there is no legitimate public interest—there is no right of privacy in public matters. Additionally, the disclosure must be such as would be highly offensive and likely to cause serious mental injury to a person of ordinary sensibilities.

*Snakenberg*, 383 S.E.2d at 6.

Defendants contend Plaintiff's claim is barred by the South Carolina Tort Claims Act ("SCTCA") because, as a public official, Plaintiff would have to prove actual malice in an invasion of privacy claim and the SCTCA bars claims against governmental entities in which actual malice is an element. *Id.* at 8-9. Defendants also assert that Plaintiff is a limited-purpose public figure who voluntarily injected himself into a particular public controversy. *Id.* at 9.

Plaintiff asserts that he "is entitled to privacy and has alleged facts sufficient to constitute a cause of action." Pl.'s Mem. 9, ECF No. 13. Plaintiff alleges that North Myrtle Beach Aquatic Fitness Center publicized personal information about Plaintiff—specifically information regarding his personal gym membership account. Plaintiff asserts the "information was published to harm the Plaintiff and present the Plaintiff in a negative light." *Id.* at 12. Plaintiff disputes that he is a public official because at the time of the publication he was no longer a police officer but a private citizen. *Id.* Plaintiff also states that he was not a public figure because it is city policy to make videos and he was "specifically instructed to make the video by the City officials." *Id.* at 13.

As Defendants correctly note, a police officer is a public official. *McClain v. Arnold*, 270 S.E.2d 124, 125 (S.C. 1980) (finding a police officer is a public official for the purposes of a defamation action). However, at the time of the purchase of the gym membership Plaintiff was no longer a police officer. Furthermore, the defamation standard requiring proof of actual malice that Defendants assert applies to this invasion of privacy action refers to "actions brought by public officials against critics *of their official conduct*." *New York Times Co. v. Sullivan*, 376 U.S. 254, 283 (1968) (emphasis added). Plaintiff's membership account with the North Myrtle Beach Aquatic Fitness Center had nothing to do with his official duties.

In addressing the public figure issue the Supreme Court "reasoned that '[a] private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention.'" *Wells v. Liddy*, 186 F.3d 505, 533 (4th Cir. 1999) (quoting *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 167 (1979)). The Fourth Circuit has established a five-factor test to determine if a plaintiff can be classified as a limited-purpose public figure as a matter of law.

14

> [T]he defendant must prove that: (1) the plaintiff has access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in the public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statement; and (5) the plaintiff retained public-figure status at the time of the alleged defamation.

*Wells*, 186 F.3d at 533. Here, Defendants have not established for purposes of his invasion of privacy claim that Plaintiff was a public official or limited-purpose public figure such that his claim is barred by the SCTCA. The undersigned finds that Plaintiff has sufficiently alleged an invasion of privacy claim to survive Defendants' Motion to Dismiss. Therefore, at this stage, Defendants' Motion to Dismiss Plaintiff's invasion of privacy claim should be denied.

   IV.   Conclusion

In light of the foregoing, the undersigned recommends that Defendants' Motion to Dismiss, ECF No. 4, be denied.

   IT IS SO RECOMMENDED.

March 12, 2013                                   Kaymani D. West
Florence, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

15